RECEIVED
FEB - 5 2019
AT 8:30 ___ M
WILLIAM T. WALSH, CLERK

Dritan Duka # 61285-066
U.S.P. Marion
U.S. Penitentiary
P.O. Box 1000
Marion, IL 62959

January ___, 2019

Re: Duka v. United States
Case No: 13-cv-3604-RBK
Crim No: 07-cr-459-RBK
Motion 60(b)(6)

Dear Court Clerk,

    I have enclosed my motion for a 60(b)(6) to grant my relief from judgement in this matter. Please file this accordingly. I have also enclosed a self addressed and stamped envelope for your convenience to mark the first page with the time and date stamped "recieved and Filed" to be returned to me at your utmost convenience.

    I am thanking you in advance!

Sincerely,
Dritan Duka

Copy: File/D.D.
A.U.S.A.

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW JERSEY

| | |
|---|---|
| Dritan Duka | [ |
|    Movant | [ |
| v | [ Case No: 13-cv-3604-RBK |
| United States of America | [ Crim No: 07-cr-459-RBK |
|    Respondent | [ |

MOTION FOR RELIEF FROM JUDGMENT (Doc 59 )

PURSUANT TO FED.R.CIV.P. 60(b)(6)

----

Comes now the Movant, Dritan Duka, and, he Moves This Court to grant him Relief From the Judgment in this case (Doc 59 ) Pursuant To Fed.R.Civ.P. 60(b)(6).  In support, Duka states as follows:

Summary
-------

1) Malice aforethought is a necessary element of the crime of conspiracy to commit murder in violation of 18 USC §1117.  But, at trial in this matter, the Court not only failed to instruct the jury as to malice aforethought, but, it affirmatively instructed the jury that the jury did not have to find malice aforethought.  Doc 351 p 6316.  As Duka thus currently stands convicted of conspiracy to commit involuntary manslaughter, a non-existant offense, Duka is actually innocent, and, both trial counsel, and, post-conviction counsel, rendered ineffective assistance, making relief pursuant to Fed.R.Civ.P. 60(b)(6) appropriate.  Cox v Horn 757 F 3d 113 (3rd Cir 2014).

Procedural Background
---------------------

2) On May 7, 2007, Dritan Duka, his brothers (collectively, "the Dukas"), Serder Tartar, and, Mohammed Shnewer, were arrested, and, charged

-1-

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW JERSEY

| | |
|---|---|
| Dritan Duka | [ |
|    Movant | [ |
| v | [ Case No: 13-cv-3604-RBK |
| United States of America | [ Crim No: 07-cr-459-RBK |
|    Respondent | [ |

RECEIVED FEB 05 2019 WILLIAM T. WALSH, CLERK

MOTION FOR RELIEF FROM JUDGMENT (Doc 59)

PURSUANT TO FED.R.CIV.P. 60(b)(6)

------

Comes now the Movant, Dritan Duka, and, he Moves This Court to grant him Relief From the Judgment in this case (Doc 59) Pursuant To Fed.R.Civ.P. 60(b)(6). In support, Duka states as follows:

Summary
-------

1) Malice aforethought is a necessary element of the crime of conspiracy to commit murder in violation of 18 USC §1117. But, at trial in this matter, the Court not only failed to instruct the jury as to malice aforethought, but, it affirmatively instructed the jury that the jury did not have to find malice aforethought. Doc 351 p 6316. As Duka thus currently stands convicted of conspiracy to commit involuntary manslaughter, a non-existant offense, Duka is actually innocent, and, both trial counsel, and, post-conviction counsel, rendered ineffective assistance, making relief pursuant to Fed.R.Civ.P. 60(b)(6) appropriate. Cox v Horn 757 F 3d 113 (3rd Cir 2014).

Procedural Background
---------------------

2) On May 7, 2007, Dritan Duka, his brothers (collectively, "the Dukas"), Serder Tartar, and, Mohammed Shnewer, were arrested, and, charged

-1-

in this matter by complaint. D NJ 07-cr-459 Doc 1.

3) Duka's trial counsel, Michael Huff, was appointed May 9, 2007. D NJ 07-cr-459 Doc 8.

4) On June 5, 2007, Duka was indicted in this matter on charges of:
   a) Count One: Conspiracy To Murder Members Of The United States Military in violation of 18 USC §1117;
   b) Count Two: Attempt To Murder Members Of The United States Military in violation of 18 USC §1114;
   c) Count Three: Possession of Firearms in Furtherance of a Crime of Violence in violation of 18 USC §924(c)(1)(A), and, (B)(ii);
   d) Count Five: Possession of Machineguns in violation of 18 USC §922(a); and,
   e) Counts Six and Seven: Possession of Firearms by an Illegal Alien in violation of 18 USC §922(g)(5);
   
   D NJ 07-cr-459 Doc 18.

5) As regards Count One, the indictment failed to charge malice aforethought, charging only that Duka entered the conspiracy "knowingly, and, willfully". D NJ 07-cr-459 Doc 18 p 1-12.

6) Trial in this matter was October 6, 2008, to December 22, 2008. D NJ 07-cr-459. Doc 248-371.

7) On December 12, 2008, without objection by Duka's trial counsel, the Court gave the jury the following erroneous instruction as to Count One:

   "The government is not required to prove these elements in this case, but, the government is required to prove that each of the defendants entered into an agreement to commit the crime ...

-2-

"Two, the defendant did so with malice aforethought, and, not in the heat of passion."

D Nj 07-cr-459 Doc 351 p 6316.

8) On April 28, 2009, despite an indictment which failed to charge a necessary element, and, despite the erroneous jury instruction of para 7, supra, Duka was sentenced to life imprisonment for Conspiracy To Murder Members Of The United States Military; he was acquitted of attempting the same, where a proper mens rea instruction was given. Doc 369.

9) On appeal, counsel failed to raise the issue of Duka's actual innocence, the improper indictment, or, the improper jury instruction; Duka's conviction on Count One was upheld February 13, 2012. United States v Duka 671 F 3d 329 (3rd Cir 2012).

10) Duka, represented by his first post-conviction counsel, Robert J Boyle, brought the instant Motion to Vacate, Correct, or, Set Aside, Sentence Pursuant To 28 USC §2255 on February 25, 2014, claiming that trial counsel was ineffective for:
  a) denying Duka his right to testify;
  b) failing to request a jury instruction on US Const Amend I;
  c) failing to object to the pseudo-expert testimony of Evan Kohlmann;
  d) failing to move for a voir dire after a jury reaction;
  e) failing to request a hearing on a missing recording;
  f) failing to introduce a video recording; and,
  g) failing to correctly argue in favor of the admissibility of a conversation that mitigated intent to join the conspiracy.
  Doc 1.

11) On June 13, 2013, Duka received new post-conviction counsel, Chad Edgar, and, Dawn Cardi, of Cardi & Edgar, LLP.

12) On May 27, 2016, this Court entered judgment denying the instant 28 USC §2255 motion. Doc 58-59; Duka v United States 2016 US Dist LEXIS 7057 (D NJ 2016).

RECEIVED
FEB - 5 2019
AT 8:30_____M

13) On June 27, 2016, Duka moved for relief from said judgment and order to bring a new claim pursuant to Johnson v United States 545 US 1108 (2015); this was denied October 21, 2016. Duka v United States 2016 US Dist LEXIS 148129 (D NJ 2016).

14) At no time did post-conviction counsel raise the issue of trial counsel's ineffectiveness in failing to move to dismiss the indictment pursuant to Fed.R.Crim.P. 12(b)(3)(B)(v), and/or, failing to object to the erroneous jury instruction.

15) Being actually innocent, and, convicted of a non-existant offense, Duka now moves for relief from the post-conviction judgment (Doc 59) and, asks this Court to re-open this proceeding to consider his actual innocence, and, trial counsel's errors in failing to move to dismiss the indictment, and, failing to object to the erroneous jury instruction.

Factual Background
------------------

16) All citations in this section are to the record in D NJ 07-cr-459.

17) In January 2006, the Dukas, Shnewer, and, six other persons, went shooting in the Poconos, filming themselves with an 8 mm camera; when the film of this vacation was given to Circuit City to develop, Circuit City turned it over to the police, who turned it over to the FBI. Doc 274 p 1792-1795, 1833-1842, 1876, 1881-1882.

18) The videotape of para 17, supra, initiated the FBI investigation

of this matter; the conspiracy to murder in violation of 18 USC §1117 was proven at trial primarily through conversations recorded by two FBI confidential human sources: Mahmoud Omar, and, Besnik Bakali.

Mahmoud Omar
------------

19) Mahmoud Omar is an FBI CHS with a business cutting up stolen cars for parts; he is also a career conman who continued to commit fraud, and, use marijuana, throughout this investigation, and, these proceedings. Doc 281 p 2354-2389, 2425-2462, 2508-2520, 2523-2541, 2551-2576; Doc 284 p 2647, 2721-2722; Doc 296 p 2945-2979, 2996-3001, 3005-3007, 3013, 3019-3039, 3107-3110, 3120-3121, 3135-3152, 3214-3215; Doc 303 p 3487-3491; Doc 308 p 3899.

20) The FBI had instructed Omar to target religious Muslims. Doc 284 p 2763.

21) Omar turned Shnewer in to the FBI for being "tight with the religion" in March 2006. Doc 281 p 2389-2397, 2462-2468; Doc 296 p 2980-2984.

22) The FBI instructed Omar to develop his relationship with Shnewer, and, the Dukas. Doc 284 p 2659; Doc 313 p 4060-4063.

23) Omar accompanied Shnewer to the "surveillance" of several military facilities in August 2006. Doc 317 p 4429-4512.

24) During the course of their relationship, Omar repeatedly found Shnewer to be lying. Doc 281 p 2584-2585, 2588-2596, 2608, 2668; Doc 304 p 3648; Doc 312 p 3914-3916.

25) Shnewer has a reputation as the "dog that barks [but] doesn't

bite", and, for being immature. Doc 304 p 3610-3613, 3619; Doc 318 p 4293-4294.

26) Shnewer was the sole source of the allegation that he was conspiring with the Dukas to attack military facilities ("the plot"). Doc 281 p 2580; Doc 284 p 2659, 2665, 2694, 2751; Doc 295 p 2889-2890; Doc 298 p 3176, 3179; Doc 304 p 3548; Doc 313 p 4064-4095, 4162-4166; Doc 314 4224, 4231, 4271-4273, 4323-4324, 4350-4351.

27) Shnewer's allegations had credibility problems:
   a) his accounts of the plot were inconsistent. Doc 304 p 3569-3661;
   b) he equivocated on the Dukas' actual involvement in the plot. Doc 298 p 3208-3211, 3221-3131; Doc 303 p 3432-3450.
   c) on at least three occassions, he explicitly stated that the Dukas were not knowledgeable about the plot. Doc 303 p 3445-3449; Doc 304 p 3535-3536; Doc 312 p 3896-3899.
   d) when Omar tried to confirm the Dukas' knowledge of the plot, they did not know what he was talking about. Doc 284 p 2654-2659, 2731, 2736-2738, 2743-2747; Doc 298 p 3090-3098, 3223; Doc 303 p 3463, 3477-3482; Doc 304 p 3533-3535, 3561-3564, 3637-3639; Doc 312 p 3900-3902; Doc 313 p 4065-4068, 4088-4091; Doc 314 p 4300;
   e) Omar came to believe that Duka, and, others, were not knowledgeable of the plot. Doc 284 p 2691-2692, 2749; Doc 312 p 3914-3916; Doc 313 p 4067, 4097-4098, 4114, 4157; Doc 314 p 4349-4350, 4368-4370.
   f) after the Dukas' arrest, omar told his friend Abraham Torky that the charged conspiracy was fake. Doc 313 p 4115-4116;
   g) the FBI itself did not believe Shnewer's allegations. Doc 284 p 2749.

-6-

28) Omar's conduct also had problems;

    a) Omar lied to the FBI to implicate Duka, and, the others. Doc 281 p 2596-2599; Doc 304 p 3528-3530;

    b) Omar repeatedly "pushed" Shnewer into talking violence, and, advancing the plot. Doc 296 p 2994, 3013-3014; Doc 298 p 3166-3175, 3191-3199; Doc 303 p 3465-3466, 3493-3498; Doc 304 p 3531-3553, 3549-3551, 3569; Doc 312 p 3918-3931.

29) Shnewer would not arrange meetings between the Dukas, and, Omar, and, became distant as Omar became more demanding. Doc 281 p 2500-2501, 2503-2506; Doc 284 p 2665-2667, 2716-2717, 2734, 2736-2742, 2746, 2750; Doc 303 p 3450-3462, 3468-3474, 3482-3486; Doc 304 p 3517-3526, 3536-3540, 3627-3629, 3639-3641; Doc 312 p 3939-3940; Doc 313 p 4029-4031.

30) Ultimately, Omar did end up supplying the guns in this case. Doc 274 p 1804-1830, 1847-1852, 1856-1867; Doc 281 p 2581-2582.

Besnick Bakali
--------------

31) After killing a man in an Albanian blood feud, Besnick Bakali entered the United States to avoid a one year prison sentence in Albania. Doc 328 p 5076-5094; Doc 330 p 5214-5219; Doc 333 p 5411-5421.

32) Bakali was recruited by the FBI out of an immigration prison, and, offered legal status in the United States, along with his family, and, a pardon in Albania, in exchange for cooperating against the Dukas. Doc 327 p 4833-4834; Doc 328 p 5088-5089; Doc 333 p 5395-5398; Doc 342 p 5701-5703.

33) Bakali initially approached the Dukas July 7, 2007, in a coffee shop, and, then developed a close social relationship with them.

-7-

Doc 327 p 4836-4840, 4848-4849, 4906-4945; Doc 328 p 4995-5025, 5030-5049, 5202-5214; Doc 333 p 5423-5427, 5435-5454, 5472-5475, 5479-5482, 5488-5490, 5497-5513; Doc 342 p 5558-5571, 5704-5713.

34) Bakali discussed obtaining guns with Duka, as well as jihad, and, fighting Americans overseas. Doc 327 p 4857-4863, 4869-4871, 4875, 4879-4885, 4906-4945; Doc 328 p 4995-5025, 5030-5049, 5054-5109; Doc 330 p 5129-5152, 5163-5166, 5169-5199.

35) Bakali never heard of a specific plan to attack Fort Dix, or, any other target, and, was told that there was no terror plot. Doc 330 p 5240-5255; Doc 333 p 5290, 5297-5308, 5316-5317, 5392-5393, 5405-5410; Doc 342 p 5647-5648, 5696-5699, 5713-5716.

36) Bakali repeatedly tried to manipulate, and, push, the Dukas into violent talk, including on March 10, 2007. Doc 333 p 5318-5320, 5331-5332, 5337-5341, 5364-5366, 5374-5376, 5391-5393, 5456-5467, 5482-5484, 5494-5496; Doc 342 p 5573-5579, 5600-5615, 5625-5636, 5639-5640, 5664-5671, 5676-5678.

The Government's Case
---------------------

37) The government's theory of the case against Duka was this:
   a) Shnewer truthfully told Omar in August 2006 of a plot to attack military facilities involving Duka. Doc 314 p 4223-4244, 4323-4325. Doc 356 p 6413;
   b) the Dukas sought to obtain a fatwa to sanction the plot. Doc 284 p 2649, 2750. Doc 304 p 3564-3568, 3608-3609. Doc 313 p 4014-4015, 4038-4039. Doc 313 p 4157-4158. Doc 314 p 4245-4246, 4336-4339, 4354-4363. Doc 333 p 5300, 5326, 5385-5389. Doc 342 p 5764-5765. Doc 356 p 6407-6408, 6425;
   c) Duka discussed jihad with Bakali. Doc 327 p 4906-4945. Doc 328

-8-

    p 4995-5025. Doc 342 p 5664, 5744-5746. Doc 356 6439-6446;

d) Duka viewed paintball as training for jihad. Doc 295 p 2890-2891. Doc 303 p 3495. Doc 304 p 3649-3650, 3665-3672. Doc 313 p 4159, 4262-4263, 4340-4343. Doc 327 4908. Doc 330 p 5142-5143, 5191-5199. Doc 333 p 5300, 5326, 5385-5389. Doc 343 p 5764-5765. Doc 356 p 6366, 6377-6380, 6405-6406, 6451;

e) the February 2007 Poconos trip was training for jihad. Doc 289 p 3189. Doc 304 p 3585-3589, 3615, 3654-3656, 3662-3663. Doc 312 p 3949. Doc 313 p 4100-4102. Doc 327 p 4851-4852, 4906-4945. Doc 328 p 4995-5025, 5030-5049, 5054-5109. Doc 330 p 5202-5214, 5227. Doc 342 p 5691-5696. Doc 356 p 6368, 6378, 6442;

f) in February 2007, Duka told Bakali that something would happen in three to four months. Doc 328 p 5004;

g) the Anwar al-Awaki DCD "Constants of Jihad" constituted the needed fatwa. Doc 328 p 5096-5099. Doc 330 p 5136-5142, 5148-5152, 5163-5166, 5169-5188. Doc 333 p 5361-5366, 5381. Doc 342 p 5650. Doc 356 p 6365-6366, 6442, 6451-6452;

h) on March 10, 2008, Duka committed to attack a military facility in six months to a year. Doc 330 p 5178, 5185-5188. Doc 333 p 5366, 5376-5382. Doc 342 5615-5620, 5649-5652, 5696, 5756-5758, 5775-5776. Doc 356 p 6366, 6376, 6447-6451;

i) Duka made comments about informants that showed consciousness of guilt. Doc 330 p 5129-5131. Doc 356 p 6373-6374, 6410-6411, 6440; and,

j) Duka obtained firearms in furtherance of the conspiracy. Doc 295 p 2881-2886. Doc 298 p 3163-3165. Doc 312 p 3972. Doc 313 p 4006-4011. Doc 314 p 4226, 4264-4267. Doc 327 p 4857-4863. Doc 330 p 5184-5191. Doc 333 p 5326. Doc 356 p 6368, 6388-

6390, 6408-6411, 6413-6414, 6449, 6453-6463.

Grounds For Relief
------------------

38) Duka brings the following two Grounds for Relief ("GFR"), stating that post-conviction counsel was ineffective for failure to raise

   a) GFR #1: trial counsel's ineffectiveness in failing to move to dismiss the indictment for failure to allege malice aforethought pursuant to Fed.R.Crim.P. 12(b)(3)(B)(v); and,

   b) GFR #2: trial counsel's ineffectiveness in failing to object to the Court's improper jury instruction stating that malice aforethought was not an element that had to be proven to find a violation of 18 USC §1117.

Argument
--------

Jurisdiction
------------

39) This Court has jurisdiction over the instant motion pursuant to 28 USC §2255. United States v Doe 810 F 3d 132 (3rd Cir 2015) (continuing 28 USC §2255 jurisdiciton to consider a motion pursuant to Fed.R.Civ.P. 60(b)(6) raising ineffective assistance of post-conviction counsel).

Standard For 60(b)(6) Relief
----------------------------

40) Ineffective assistance of post-conviction counsel in failing to raise errors of trial counsel is a procedural defect in a 28 USC §2255 proceeding that excuses procedural default, and, is cognizable pursuant to Fed.R.Civ.P. 60(b)(6). Cox v Horn 757 F 3d 113 (3rd Cir 2014) citing Martinez v Ryan 182 L Ed 2d 272 (2012).

41) A post-conviction motion that raises a fundamental miscarriage of justice excuses procedural default in not having earlier raised

-10-

that claim. <u>McQuiggin v Perkins</u> 569 US 383 (2013).

42) "Society views the conviction of an innocent person as perhaps the most grievous mistake our judicial system can commit", and, thus, the conviction of an innocent person is a "complete miscarriage of justice." <u>Satterfield v DA Phila</u> 872 F 3d 152 (3rd Cir 2017); <u>Davi v United States</u> 417 US 333 (1974).

43) To claim <u>Martinez</u> relief, a movant must make a threshold showing of "extraordinary circumstances", such as actual innocence, "where, without such relief, an extreme, and, unexpected, hardship would occur." <u>Cox</u> citing <u>Sawko v Healtheast, Inc</u> 989 F 2d 138 (3rd Cir 1993) <u>accord</u> <u>Budget Blinds, Inc v White</u> 536 F 3d 244 (3rd Cir 2008).

44) After making a threshold showing, three other conditions must be met:
   a) the default was caused by ineffective assistance of post-conviction counsel, or, the absence of counsel;
   b) in the initial review proceedings; and,
   c) the underlying claim of trial counsel ineffectiveness is "substantial", meaning "the claim has some merit", analogous to the substantiality requirement for a certificate of appealability.

<u>Martinez</u>.

The Elements Of Conspiracy To Murder In Violation of 18 USC §1117
-------------------------------------------------------------------

45) 18 USC §1111 defines murder as follows:
   "Murder is the unlawful killing of a human being with malice aforethought."

46) Deliberation, and, pre-meditation, distinguish first degree murder

-11-

from second degree murder, but, 18 USC §1117 encompasses conspiracies to commit either. 18 USC §1111, §1117.

47) In 1959, the Supreme Court found that "conspiracy to commit a particular substantive offense cannot exist without the degree of criminal intent necessary for the substantive offense itself." Ingram v United States 360 US 672 (1959).

48) Applying the principles of Ingram, the Third Circuit has found that the elements of conspriacy to commit murder are:
1) intentionally entering into an agreement;
2) with the purpose of killing; and,
3) with malice aforethought.
United States v Knight 700 F 3d 59 (3rd Cir 2011) (Virgin Islands case) citing United States v Reyeros 537 F 3d 220 (3rd Cir 2008).

49) The Fifth, and, Ninth, Circuits have found that a mens rea of mere "willfullness" in joining the conspiracy fails to state an offense pursuant to 18 USC §1117. United States v Harrelson 754 F 2d 1153 (5th Cir 1985); United States v Croft 124 F 3d 1109 (9th Cir 1996).

50) When a person stands convicted of willful killing without malice aforethought, they stand convicted of involuntary manslaughter by criminal negligence, not murder. Marlowe v United States 555 US 963 (2008) (Scalia, dissent).

GFR #1: The Indictment Charges Conspiracy to Commit Involuntary Manslaughter, A Non-Existant Offense
------------------------------------------------------------------

51) The indictment in this matter charged that Duka "knowingly, and, willfully", conspired to kill another person, without charging malice aforethought. Doc 18 p 1-12.

-12-

52) The element of malice aforethought may not be ommitted from a murder indictment simply because it is commonly understood. United States v Resendiz-Ponce 549 US 102 (2007) (in dicta).

53) As a violation of 18 USC §1117 requires malice aforethought as an essential element, the indictment was subject to dismissal pursuant to Fed.R.Crim.P 12(b)(3)(B)(v). Knight; Harrelson; Croft; United States v Small 793 F 3d 350 (3rd Cir 2014) citing United States v Hedaithy 392 F 3d 580 (3rd Cir 2004).

54) Trial counsel's failure to investigate the elements of the offense, thereby allowing Duka to be tried, convicted, and, sentenced to life imprisonment for a non-existant offense, seems to at least arguably meet the prejudice, and, performance, prongs of Strickland v Washington 466 US 668 (1984); see, eg, Satterfield, Davis.

GFR #2:   The Court Instructed The Jury That The Government Did Not Have
          To Prove A Necessary Element
-----------------------------------------------------------------------

55) "In a criminal trial, the [government] must prove every element of the offense, and, a jury instruction violates due process if it fails to give effect to that requirement." Middleton v McNeil 541 US 433 (2004) citing Sandstrom v Montana 442 US 510 (1979); In Re: Winship 397 US 358 (1970).

56) A court may not assume the element of malice aforethought. Mullen-ey v Wilbur 421 US 684 (1975).

57) Malice aforethought is a necessary element to find a violation of 18 USC § 1117. 18 USC §1111; Knight; Harrelson; Croft; Davis v United States 160 US 469 (1895) ("The very essence" of murder is "that it be committed ... with malice aforethought.")

-13-

58) At trial, this Court specifically instructed the jury that the government did not have to prove malice aforethought to convict Duka of violating 18 USC §1117. Doc 351 p 6316.

59) The jury acquitted Duka of Count 2, attempted murder, for which they were instructed that malice aforethought was a necessary element. Doc 369.

60) Harmless error analysis applies to the failure of the District Court to instruct the jury on a necssary element. Smith v Horn 120 F 3d 400 (3rd Cir 1997).

61) In this case, the Court did not fail to instruct the jury on a necessary element, but, affirmatively told the jury that the government did not have to prove a necessary element. Doc 351 p 6316. Thus, it is not clear that the harmless error analysis required by Smith applies.

62) However, insofar as a harmless error analysis must be conducted, the acquittal returned by the jury on Count Two, where the primary difference in the instructions was a proper instruction on mens rea, should weigh heavily in the Court's decision as to whether, or, not, there was a "substantial, and, injurious" effect on the jury verdict. Smith. But, also, as described para 16-37, supra, the government's evidence as to Duka's mens rea was hardly so clear that the Court can say that a properly instructed jury would have found malice aforethought. Mahmoud Omar's testimony did not meaningfully extend beyond the mens rea of Mohammed Shnewer, and, Shnewer's supposed co-conspirator statements were so impeached that even the FBI did not believe them. para 19-30, 37(a), supra. Besnik Bakalai's evidence was more probative, but, turned upon a hot-headed statement

-14-

Duka made on March 10, 2007, while exhausted, and, under provocation. Did that one statement subsequently turn into malice aforethought? The government's argument is that the purchase of weapons in May 2007 showed that it did, but, Duka made a believable argument that the weapons were for continued recreational shooting in the Poconos. Training, or, not, that alone is not enough of necessity for the Court to conclude that the failure to instruct the jury as to mens rea did not have a "substantial, and, injurious" effect on the verdict.

63) Again, trial counsel's failure to investigate the elements of the crime his client was charged with, resulting in his client's wrongful conviction, and, life sentence, seem to be arguably prejudicial deficient performance under <u>Strickland</u>. see, eg, <u>Satterfield</u>, <u>Davis</u>.

60(b)(6) Relief Should Be Granted
----------------------------------

64) Dritan Duka has spent 11 1/2 years in prison for the non-existant crime of conspiracy to commit involuntary manslaughter. <u>para</u> 45-63, supra. This constitutes a fundamental miscarriage of justice under <u>McQuiggin</u>, <u>Martinez</u>, and, <u>Cox</u>.

65) Actual innocence excuses Duka's procedural defaults. <u>McQuiggin</u>, <u>Martinez</u>, <u>Cox</u>. However, if it didn't, Duka has still exercised reasonable diligence as his actual innocence, and, the defects in the indictment, and, jury instructions, have been missed not only by the US Attorney's Office, which devoted substantial resources to this case, but, also the Court, and, a small horde of defense lawyers representing Duka, and, his co-defendants. If dozens of lawyers did not notice the defect (though a "jailhouse lawyer" with

-15-

experience in murder cases, and, numerous wins against the United States in post-conviction proceedings did), Duka could hardly be said to have not been diligent in discovering it.

66) This motion also raises the substantial claims of ineffective assistance of trial counsel in conjunction with the ineffective assistance of post-conviction counsel in an initial collateral review proceeding, meeting the other Cox requirements for Fed.R.Civ.P. 60(b)(6) relief.

Conclusion
----------

67) This Court should grant relief from judgment pursuant to Fed.R.Civ.P. 60(b)(6) proceeding, reopen the 28 USC §2255 proceeding, and, consider Duka's claims of actual innocence, and, ineffective assistance of trial counsel in failure to move to dismiss the indictment, and, failure to object to the jury instructions, as to Count One.

Respectfully Submitted,

*/s/ Dritan Duka*
Dritan Duka
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Motion For Relief From Judgment was mailed to the Clerk of the Court, and, the Office of the United States Attorney for the District of New Jersey, 1st Class Postage Prepaid, this 30th day of January, 2019.

*/s/ Dritan Duka*
Dritan Duka

-16-

Dritan Duka  
61285-066  
United States Penitentiary, Marion  
P.O. Box 1000  
Marion, IL 62959

7016 1370 0000 9136 8358





RECEIVED  
FEB -5 2019  
AT 8:30 ___M  
WILLIAM T. WALSH, CLERK

⇔61285-066⇔  
Us Dist Court New Jersey  
Mitchell H Cohen Cthouse  
400 Cooper ST  
Room 1050  
Camden, NJ 08102  
United States