## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

DRITAN DUKA,                                  :
                                              :
                    Petitioner,               :           Civ. No. 13-3664 (RBK)
                                              :
        v.                                    :
                                              :
UNITED STATES OF AMERICA,                     :           **OPINION**
                                              :
                    Respondent.               :
_____:


_____

SHAIN DUKA,                                   :
                                              :
                    Petitioner,               :           Civ. No. 13-3665 (RBK)
                                              :
        v.                                    :
                                              :
UNITED STATES OF AMERICA,                     :           **OPINION**
                                              :
                    Respondent.               :
_____:

**ROBERT B. KUGLER, U.S.D.J.**

## I.      INTRODUCTION

Petitioners, Dritan and Shain Duka (hereinafter collectively "Petitioners") are federal

prisoners. Dritan is proceeding with a motion for leave to amend his 28 U.S.C. § 2255 motion.

(*See* No. 13-3664 ECF 86). Shain is proceeding with an amended motion to vacate, set aside or

correct his sentence pursuant to 28 U.S.C. § 2255. (*See* No. 13-3665 ECF 84). Also pending

before this Court are Respondent's motions to file sur-replies in both cases in response to

Petitioners' pending motions. (*See* No. 13-3664 ECF 100; No. 13-3665 ECF 87). For the

following reasons, Respondent's motions to file sur-replies are granted. Dritan's motion for leave

to amend is granted in part so that certain claims contained therein (most notably his claims not

previously denied) can be analyzed. However, on Dritan's § 2255 claims that are permitted to

proceed, they are denied. Shain's amended motion to vacate, set aside or correct his sentence is denied as the claims contained therein are denied.[1] A certificate of appealability shall issue on this Court's application of the concurrent sentence doctrine's rationale in declining to review Petitioners' § 924(c) convictions. It shall not issue on the remaining claims that are denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioners, their brother Eljvir Duka, Mohammed Shnewer and Sedar Tatar were convicted after a jury trial of various federal charges. As this Court noted in a prior opinion:

> Shnewer, the Duka brothers, and Tatar are a group of young men who lived in New Jersey and developed an interest in violent jihad, particularly attacks against the United States military. Defendants, who had known each other since high school, came to the FBI's attention after it received a copy of a video that was brought to a Circuit City store in Mt. Laurel, New Jersey for copying. The video dated from January 2006 and depicted the five defendants and others at a firing range in the Pocono Mountains, shooting weapons and shouting "Allah Akbar!" and "jihad in the States."
>
> Over the course of the next sixteen months, the FBI deployed two cooperating witnesses, Mahmoud Omar and Besnik Bakalli, to monitor defendants' activities. The evidence presented at trial showed that, between January 2006 and May 2007, defendants viewed and shared videos of violent jihadist activities, including beheadings, around the world; they viewed and shared videos of lectures advocating violent jihad against non-Muslims; they sought to acquire numerous weapons, including automatic firearms and rocket-propelled grenades; they returned to the Poconos, where they again

---

[1] Dritan presents his *pro se* motion as a motion for leave of Court to amend his original petition. Shain's counseled motion is presented as an amended § 2255 motion rather than seeking leave to amend his original § 2255 motion. This difference as well as some subtle differences in Dritan's *pro se* motion accompanied by his subsequent counseled memorandum of law compared to Shain's counseled amended § 2255 motion are why there are different "outcomes" on the motions themselves. Nevertheless, for the reasons described *infra*, Petitioners are not entitled to relief on any of the claims raised in their motions.

engaged in shooting practice; they discussed plans to attack the United States military; they conducted research and surveillance on various potential targets for such an attack in New Jersey, Pennsylvania, and Delaware; and they procured a map of the United States Army Base at Fort Dix to use in planning and coordinating such an attack.

With respect to the individual defendants, the evidence demonstrated the following:

Mohamad Shnewer is a naturalized American citizen who was born in Jordan. He admired and sought to emulate the "nineteen brothers," i.e., the September 11 hijackers, Osama bin Laden, and the leader of Al Qaeda in Iraq, Abu Musab al-Zarqawi. Shnewer openly discussed and planned attacks on military targets in New Jersey, Pennsylvania, and Delaware. Along with Omar, the government informant, he staked out the United States Army Base at Fort Dix, McGuire Air Force Base, Lakehurst Naval Air Station, and the United States Army Base at Fort Monmouth in New Jersey; the United States Coast Guard Base in Philadelphia, Pennsylvania; and Dover Air Force Base in Delaware. Shnewer also considered attacking the federal government building at 6th and Arch Streets in Philadelphia and drove by the building to determine whether such an attack would be feasible. To accomplish an attack on these targets, Shnewer proposed deploying a gas tanker truck as a bomb, using roadside bombs or surface-to-air missiles, and spraying military targets with machinegun fire. He sought to acquire AK–47 machineguns from Omar to use in such an attack.

Dritan, Shain, and Eljvir Duka are brothers who were born in Albania. During the events that were the subject of the trial, they were in the United States illegally. In 2006 and 2007, the Dukas took at least two trips to the Poconos to train for jihad by firing weapons, attempting to buy automatic weapons, discussing jihad, and watching violent jihadist videos. The Dukas befriended government informant Bakalli, a fellow Albanian, and encouraged him to join them in avenging Muslims

3

who had been oppressed in the United States and Israel. They viewed and praised a lecture, *Constants on the Path to Jihad,* by Anwar al-Awlaki, the prominent cleric and proponent of attacks against the United States military, and videos depicting attacks on American soldiers by violent jihadists in Iraq and elsewhere. In recorded conversations presented at trial, the Dukas described beheadings depicted in the videos as just punishment for traitors. The Dukas watched the beheading videos over and over again until they became inured to the spectacle. Dritan told Bakalli that, although at first he "couldn't take it," "[n]ow I see it and it's nothing, I do not care. I saw hundreds being beheaded." Similarly, Eljvir told Bakalli that the beheadings were difficult to watch at first, but that "[n]ow we can watch it no problem."

Like Shnewer, the Dukas sought to acquire firearms to further their plans. They could not acquire weapons lawfully because they were in the country illegally, so they turned to the black market. By January 2007, the three brothers told Bakalli they had acquired a shotgun, two semi-automatic rifles, and a pistol, and they continued to look for opportunities to buy machineguns.

Later that spring, Dritan Duka ordered nine fully automatic weapons – AK 47s and M–16s – from a contact of Omar in Baltimore. The FBI arranged a controlled transaction, and, on May 7, 2007, Dritan and Shain Duka went to Omar's apartment to retrieve their weapons. After handing Omar $1,400 in cash, Dritan and Shain examined and handled four fully automatic machineguns and three semiautomatic assault rifles. They asked Omar for garbage bags to conceal the weapons (so they would look like golf clubs) as they carried them out to the car. Before they could get there, however, federal and state law enforcement officers entered Omar's apartment and arrested them. The entire transaction was captured on video by equipment installed in Omar's apartment by the FBI and was shown to the jury at trial.

Serdar Tatar is a lawful permanent resident in the United States who was born in Turkey. Tatar appears in the video of defendants' January 2006 training trip to the Poconos. After extensive discussions with Omar about Shnewer's plan to attack Fort Dix, Tatar agreed to help by providing Omar with a map of Fort Dix to use in planning such an attack. Regarding the overall plan to attack Fort Dix, Tatar told Omar in a recorded conversation, "I'm in, honestly, I'm in."
All five defendants were arrested on May 7, 2007, after Dritan and Shain Duka completed the controlled firearm purchase from Omar.

*United States v. Duka*, 671 F.3d 329, 333–35 (3d Cir.2011). . .

[T]he Dukas were charged with: (1) conspiracy to murder members of the United States military in violation of 18 U.S.C. §§ 1114 & 1117 ("Count I"); (2) attempt to murder members of the United States military in violation of 18 U.S.C. § 1114 ("Count II"); (3) possession or attempted possession of firearms in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and 924(c)(1)(B)(ii) ("Count III"); and (4) possession of firearms by an illegal alien in violation of 18 U.S.C. § 922(g)(5) ("Count VII"). Additionally, Dritan and Shain Duka were charged with possession of machineguns in violation of 18 U.S.C. § 922(o). The Dukas pled not guilty and went to trial. A jury found Dritan and Shain Duka guilty of the following: (1) conspiracy to murder members of the United States military, (2) possession or attempted possession of firearms in furtherance of a crime of violence; (3) possession of machineguns; and (4) possession of firearms by an illegal alien. . . .The jury found the Dukas not guilty of attempt to murder members of the United States military.

*Duka v. United States*, No. 13-3664, 2015 WL 5768786, at *1–3 (D.N.J. Sept. 30, 2015).

Petitioners received identical sentences; namely: (1) life imprisonment on Count I – conspiracy to murder; (2) 120 months imprisonment on the possession of machine guns and possession of firearms by an illegal alien to run concurrently to the life sentence on Count I ; and (3) 360 months imprisonment on the possession of firearms in furtherance of a crime of violence to run consecutively to the life imprisonment sentence on Count I. (*See* Crim. No. 07-539 ECF 417 &

419). The United States Court of Appeals for the Third Circuit affirmed Petitioners judgment of conviction on direct appeal. *See Duka*, 671 F.3d at 333. The United States Supreme Court denied Petitioners' petition for writ of certiorari on their direct appeals. *See Duka v. United States*, 567 U.S. 906 (2012).

Petitioners then filed *pro se* motions to vacate, set aside or correct their sentences pursuant to 28 U.S.C. § 2255. (*See* No. 13-3664 ECF 1; No. 13-3665 ECF 1). Petitioners (along with Eljvir) filed a counseled joint § 2255 memorandum of law in February 2014 raising seven claims. (*See* No. 13-3664 ECF 13; No. 13-3665 ECF 13). On September 30, 2015, Petitioners' claims were denied except for their ineffective assistance of counsel claim related to a purported denial of their right to testify at trial. (*See* No. 13-3664 ECF 39 & 40; No. 13-3665 ECF 38 & 39). After an evidentiary hearing, that claim was also denied on May 31, 2016. (*See* No. 13-3664 ECF 58 & 59; No. 13-3665 ECF 57 & 58).

Prior to filing a notice of appeal, Petitioners filed a motion to set aside the judgment of conviction, most notably their § 924(c) convictions pursuant to *Welch v. United States*, 136 S. Ct. 1257 (2017). (*See* No. 13-3664 ECF 60; No. 13-3665 ECF 59). As that motion was pending, Petitioners also filed a notice of appeal from the denial of their § 2255 claims. (*See* No. 13-3664 ECF 61; No. 13-3665 ECF 60).

On October 26, 2016, this Court denied Petitioners' motions to set aside their § 924(c) convictions. Their motions were construed as second or successive § 2255 motions that lacked authorization from the Third Circuit to be filed. (*See* No. 13-3664 ECF 67 & 68; No. 13-3665 ECF 65 & 66). Petitioners then filed notice of appeals from those October 26, 2016 opinions and orders. (*See* No. 13-3664 ECF 69; No. 13-3665 ECF 67).

On February 6, 2017, the Third Circuit denied a certificate of appealability on Petitioners' appeals from the denial of their § 2255 claims. (*See* No. 13-3664 ECF 71; No. 13-3665 ECF 69).

In February, 2019, Dritan field a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). (*See* No. 13-3664 ECF 72). Dritan asserted this Court not only failed to instruct the jury on malice aforethought as it related to his conspiracy to murder conviction, but also this Court affirmatively told the jury it did not have to find malice aforethought whatsoever to convict. (*See id.*). Shain filed an identical motion for relief from judgment in April, 2019. (*See* No. 13-3665 ECF 70). In opinions and orders entered June 14, 2019 and June 17, 2019 respectively, this Court denied Dritan and Shain's motions for relief from judgment related to the malice aforethought jury instructions. (*See* No. 13-3664 ECF 77 & 78; No. 13-3665 ECF 72 & 73). In both cases, this Court again found that Petitioners' motions for relief from judgment constituted unauthorized second or successive § 2255 motions.

While both Petitioners initially appealed the June, 2019 decisions (*see* No. 13-3664 ECF 79; No. 13-3665 ECF 74), Dritan later voluntarily withdrew his appeal in November, 2019. (*See* No. 13-3664 ECF 88). Shain though continued pursuing his appeal. On January 22, 2020, the Third Circuit denied a certificate of appealability on Shain's appeal. (*See* No. 13-3665 ECF 83). In denying a certificate of appealability, the Third Circuit stated as follows:

> The foregoing request for a certificate of appealability is denied. The District Court denied Duka's Rule 60(b) motion as a second or successive § 2255 motion. *As the correctness of the challenged jury instruction is not debatable, Duka has not made a substantial showing of the deprivation of a constitutional right. See Morris v. Horn,* 187 F.3d 333, 340 (3d Cir. 1999) (explaining requirements to obtain certificate of appealability from denial of Rule 60(b) motion in a habeas case).

(No. 13-3665 ECF 83) (emphasis added).

On October 4, 2019, the Third Circuit remanded Petitioners' appeals from the denial of their June, 2016 motion to set aside judgment. (*See* No. 13-3664 ECF 81; No. 13-3665 ECF 76). To reiterate, those motions sought to set aside Petitioners' § 924(c) convictions.

In Dritan's case, this Court ordered Respondent to file a response to Dritan's June, 2016 motion to set aside judgment on October 15, 2019. (*See* No. 13-3664 ECF 82). Thereafter, on November 5, 2019, Dritan filed a *pro se* motion for leave to amend despite still having habeas counsel, Chad Edgar, Esq., as his habeas counsel of record. (*See id.* ECF 86). In that motion for leave to amend, Dritan raised the following claims:

1. The seven claims previously decided by this Court on the merits ("Claims I-VII")

2. His § 924(c) conviction should be vacated pursuant to *United States v. Davis*, 139 S. Ct. 2319 (2019).

3. He is actually innocent of conspiracy to murder due to ineffective assistance of counsel for failing to object/appeal to the malice aforethought jury instructions.

Dritan sought to remove Mr. Edgar as habeas counsel in November, 2019. (*See id.* ECF 85). On December 19, 2019, Stephen Downs, Esq. entered notice of appearance to represent Dritan. (*See id.* ECF 90). Dritan's request to have Mr. Edgar removed as counsel was granted on December 23, 2019. (*See id.* ECF 93). Thereafter, Mr. Downs filed a memorandum in support of Dritan's motion for leave to amend on January 30 2020. (*See id.* ECF 94). The memorandum of law asserts the following:

1. This Court should grant Dritan's leave to amend.

2. Dritan's conviction under § 924(c) must be vacated pursuant to *Davis*, 139 S. Ct. 2319 ("Claim VIII").

3. This Court should conduct a full resentencing on Dritan's other convictions in light of in light of vacating Dritan's § 924(c) conviction.

4. Dritan's conspiracy to murder conviction must be vacated due to ineffective assistance of trial and appellate counsel when counsel did not object to jury instructions which failed to adequately instruct the jury as to malice aforethought and premeditation ("Claim IX").

5. Dritan is actually innocent of conspiracy to murder ("Claim X").

(*See id.*). Shain, through his counsel, Kathy Manley, Esq., filed an amended motion to vacate pursuant to § 2255 that is virtually identical to Dritan's memorandum in support of his motion to amend filed by Mr. Downs on February 4, 2020. (*Compare* No. 13-3665 ECF 84 *with* No. 13-3664 ECF 94). Respondent filed responses in opposition to Dritan's and Shain's motions on March 25, 2020. (*See* No. 13-3664 ECF 95; No. 13-3665 ECF 85). Petitioners filed counseled replies in support of their filings on May 14, 2020. (*See* No. 13-3664 ECF 99; No. 13-3665 ECF 86). Respondent then filed motions to file sur-replies in both cases. (*See* No. 13-3664 ECF 100; No. 13-3665 ECF 87). Petitioners oppose Respondent's motions to file sur-replies. (*See* No. 13-3664 ECF 101; No. 13-3665 ECF 88). This Court will use its discretion to grant Respondent's motions to file sur-replies in both cases. *See Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3 (D.D.C. 2011) (decision on whether to grant leave to file a sur-reply is left to sound discretion of court); *see also* L. Civ. R. 7.1(d)(6).

## III.    DISCUSSION

### A. Dritan's Motion for Leave to Amend

Dritan's motion for leave to amend includes his attempt to relitigate the seven claims this Court previously denied in this Court's September 30, 2015 and May 31, 2016 opinions.[2] Given this Court's previous denial of these claims, and the Third Circuit's denial of a certificate of appealability on these claims, Petitioner shall not be granted leave to relitigate claims already decided by this Court and the Third Circuit. Accordingly, Dritan's motion for leave to amend is denied on these seven claims. Nevertheless, this Court will grant Dritan's motion for leave to amend in its other respects so that the remaining claims raised in that motion for leave to amend may be analyzed.

### B. Timeliness of Claims VIII, IX and X

Section § 2255(f) includes a one-year period in which a petitioner may file a request for relief, which runs form the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence[.]

---

[2] Shain's amended motion to vacate, set aside or correct his sentence (*see* No. 13-3665 ECF 84) does not include an argument seeking to relitigate Claims I-VII that were previously denied by this Court and affirmed by the Third Circuit when it denied a certificate of appealability.

28 U.S.C. § 2255(f). "[T]he period of limitation in 28 U.S.C. § 2255(f) should be applied on a claim-by-claim basis." *Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014); *see also Fielder v. Varner*, 379 F.3d 113, 117-22 (3d Cir. 2004).

The parties do not dispute that Claim VIII is timely. Indeed, Petitioners raised this claim within one-year of when *Davis* was decided in June, 2019. *See Franklin v. Ortiz*, No. 18-13713, 2020 WL 3638279, at *3 (D.N.J. July 6, 2020) (noting that a number of Circuits, including the Third Circuit have held or implicitly held that a *Davis* claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable) (citing *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019); *United States v. Bowen*, 936 F.3d 1091, 1098 (10th Cir. 2019); *In re Matthews*, 934 F.3d 296 (3d Cir. 2019); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019)).

Claim IX and X though require different timeliness analyses than Claim VIII. Timeliness is dictated by § 2255(f)(1) with respect to Claim IX. To reiterate, Petitioners assert in Claim IX that trial and appellate counsel were ineffective by failing to object/raise on appeal that the malice aforethought instructions were improper.

The United States Supreme Court denied Petitioners' petition for writ of certiorari on their direct appeals on June 11, 2012. *See Duka*, 567 U.S. 906. Thus, Petitioners had one-year from that date in which to bring Claim IX.[3] Dritan filed his original § 2255 motion on June 1, 2013 pursuant to the prisoner mailbox rule, right before the one-year statute of limitations period expired. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988); *see also Maples v. Warren*, No. 12–0993, 2012 WL 1344828, at *1 n.2 (D.N.J. Apr. 16, 2012) ("Often times, when the court is unable to determine the exact date that a petitioner handed his petition to prison officials for

---

[3] Petitioners make no argument that equitable tolling applies to extend the one-year period beyond June 11, 2013.

mailing, it will look to the signed and dated certification of the petition."). Shain filed his original § 2255 motion on May 28, 2013 pursuant to the prisoner mailbox rule, or again right before the one-year statute of limitations expired. The filing of the original *pro se* § 2255 motions though did not toll the statute of limitations. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Thus, Claim IX appears to be untimely as it was not raised until well after Petitioners' statute of limitations expired on June 11, 2013.

Nevertheless, Claim IX may be considered timely if it "relates back" to any of Petitioners' claims raised in their original § 2255 motions.

> Pursuant to Rule 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a "habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a *common core of operative facts*." *Id.* at 664, 125 S. Ct. 2562 (emphasis added).
>
> In "search[ing] for a common core of operative facts in the two pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), courts should remain aware that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide,'" *Glover v. FDIC*, 698 F.3d

> 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is
> given 'fair notice of the general fact situation and the legal theory
> upon which the amending party proceeds' will relation back be
> allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at
> 310). For example, we have held that "amendments that restate the
> original claim with greater particularity or amplify the factual
> circumstances surrounding the pertinent conduct, transaction[,] or
> occurrence in the preceding pleading fall within Rule 15(c)"
> because the opposing party will have had sufficient notice of the
> circumstances surrounding the allegations contained in the
> amendment. *Bensel*, 387 F.3d at 310.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

Claim IX does not relate back to the claims in Petitioners' original § 2255 motions.

Claim IX does not restate any original claim with greater particularity or amplify the factual

circumstances surrounding the pertinent conduct raised in the original § 2255 motions. While

Petitioners did raise an ineffective assistance of counsel claim on jury instructions, it is not tied

to a common core of operative facts as in Claim IX. Claim II related to a failure of counsel to

*request* a First Amendment instruction, rather than Claim IX which challenges the malice

aforethought instructions given. *Cf. Porter v. Griener*, No. 00-6047, 2005 WL 3344828, at *10

(N.D.N.Y. Nov. 18, 2005) ("Since none of the claims in the original petition are based on *this*

*jury charge*, a common core of operative facts does not exist for purposes of relation back.")

(emphasis added).

Petitioners argue that Claim IX relates back because they asserted in their original § 2255

motion that appellate counsel was insufficient by failing to raise a sufficiency of the evidence

claim on their conspiracy to murder convictions in their original filings.[4] However, Claim IX

asserts an ineffective assistance of counsel claim for failing to challenge specific jury

instructions and does not relate back to an insufficiency of the evidence claim. *Cf. Maciel v.*

---

[4] This claim was not pursued by habeas counsel in the memoranda of law filed in support of
Petitioners' § 2255 motions.

*Knipp*, No. 12-1023, 2018 WL 5336393, at *5 (E.D. Cal. Oct. 29, 2018) (claim of counsel's ineffectiveness for failing to bring an insufficiency of the evidence claim does not relate back to original claim alleging counsel's failure to address jury instruction deficiencies), *report and recommendation adopted by*, 2019 WL 2448293 (E.D. Cal. June 12, 2019). Nevertheless, even if this Court were to determine Claim IX does relate back, it still fails on the merits for the reasons discussed *infra*.

Claim X asserts Petitioners are actually innocent of conspiracy to murder. "Actual innocence can serve as a gateway to pierce the § 2255(f) statute of limitations[.]" *Thieme v. United States*, No. 19-15507 (SDW), 2020 WL 1441654, at *4 (D.N.J. Mar. 24, 2020) (citing *McQuiggan v. Perkins*, 569 U.S. 383, 391-99 2013). Given this possibility, Claim X will not be denied on timeliness grounds.

## C.   Claim VIII - 924(c) Convictions

Petitioners' convictions at trial included possession or attempted possession of firearms in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and 924(c)(1)(B)(ii). These criminal statute sections state as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such *crime of violence* or drug trafficking crime—
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years;
> > (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

> > (iii) if the firearm is discharged, be sentenced to a
> > term of imprisonment of not less than 10 years.
>
> (B) If the firearm possessed by a person convicted of a violation of
> this subsection—
>
> > (ii) is a machinegun or a destructive device, or is
> > equipped with a firearm silencer or firearm muffler,
> > the person shall be sentenced to a term of
> > imprisonment of not less than 30 years.

18 U.S.C. §§ 924(c)(1)(A) & 924(c)(1)(B)(ii) (emphasis added). "Crime of violence" is defined

by the statute as follows:

> For purposes of this subsection the term "crime of violence" means
> an offense that is a felony and—
>
> > (A) has as an element the use, attempted use, or
> > threatened use of physical force against the person
> > or property of another, or
> > (B) that by its nature, involves a substantial risk that
> > physical force against the person or property of
> > another may be used in the course of committing
> > the offense.

18 U.S.C. § 924(c)(3). The first clause in § 924(c)(3)(A) is commonly referred to as the

"elements clause" and § 924(c)(3)(B) is the "residual clause." *See Davis*, 139 S. Ct. at 2324. In

*Davis*, the United States Supreme Court found the residual clause of § 924(c)(3)(B)

unconstitutionally vague. *See id.* at 2336. *Davis* did not though invalidate the elements clause of

§ 924(c)(3)(A). *See United States v. Kennedy*, No. 19-1591, 2019 WL 4316867, at *1 (3d Cir.

Sept. 9, 2019) (noting the elements clause § 924(c)(3)(A) "survives *Davis*"). Thus, for

Petitioners' § 924(c) convictions to remain valid, they must have been convicted under the

"elements" rather than the residual clause.

The underlying offenses to which the § 924(c) convictions are connected to Petitioners in

this case are their conspiracy to murder convictions. Respondent concedes that "conspiracy is not

categorically a crime of violence under § 924(c)(3)(A) because it does not have as an element the use, attempted us[e], or threatened use of physical harm." (No. 13-3664 ECF 95 at 8; No. 13-3665 ECF 85 at 8 (citing *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019))).

Nevertheless, Respondent argues Petitioners' § 924(c) convictions need not be vacated pursuant to the same rationale as the "concurrent sentence doctrine."

> Under the concurrent sentence doctrine, a court has "discretion to avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent." *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997); *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1100 (3d Cir. 1989) (citing *United States v. Lampley*, 573 F.2d 783 (3d Cir. 1978) ). Since "the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility. The practice is eminently practical and preserves judicial resources for more pressing needs." *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir.1986) (citations omitted).

*Parkin v. United States*, 565 F. App'x 149, 152 (3d Cir. 2014). Respondent notes Petitioners' § 924(c) thirty-year sentences are running consecutively rather than concurrently to the life sentences on their conspiracy to murder convictions. However, Respondent claims that the rationale of the concurrent sentence doctrine should apply with equal force in this situation because, as a practical matter, Petitioners will never serve their § 924(c) convictions due to their life sentences on their conspiracy to murder convictions.

In *Gardner v. Warden Lewisburg, USP*, 845 F.3d 99, 104 (3d Cir. 2017), the Third Circuit rejected claims that would have affected three of petitioner's concurrent life sentence convictions. Applying the concurrent sentence doctrine, the Third Circuit declined to pass judgment on a claim though that would have affected three other concurrent life sentence convictions noting that review of those claims would not alter Gardner's term of imprisonment. *See id.*

More recently, in *Roman v. Ebbert*, No. 17-1146, 2019 WL 247398, at \*5 (M.D. Pa. Jan. 17, 2019), the Middle District of Pennsylvania declined to review a challenge to a § 924(c) conviction where the § 924(c) sentences were to run *consecutive* to life sentences on other counts. Ultimately, the Middle District of Pennsylvania applied the concurrent sentence doctrine noting petitioners would still have to serve life sentences regardless of the validity of their § 924(c) convictions. *See Roman*, 2019 WL 247398, at \*5; *see also Eubanks v. United States*, Crim. No. 97-110, 2019 WL 7293389, at \*6 (D.S.C. Dec. 30, 2019) (applying concurrent sentence doctrine in declining to review validity of sentence on count 3 when petitioner would still face a consecutive life sentence on count 2). Citing to *Gardner*, the Middle District of Pennsylvania specifically noted petitioners had failed to show any collateral consequences rising to the level of "custody" for habeas purposes. *See Roman*, 2019 WL 247398, at \*5 (citing *Gardner* 845 F.3d at 104; *United States v. Ross*, 801 F.3d 374, 382 (3d Cir. 2015)).

The collateral sentence doctrine applies when a petitioner will not suffer any collateral consequences arising from the challenged conviction. *See Logan v. District Attorney Allegheny Cty.*, 752 F. App'x 119, 122 (3d Cir. 2018) (citations omitted). Petitioners rely on *Ray v. United States*, 481 U.S. 736 (1987) to argue that the concurrent sentence doctrine's rationale does not apply on their § 924(c) convictions because they were also charged a $100 assessment. (*See* No. 13-3664 ECF 99 at 1; No. 13-3665 ECF 86 at 1). This argument by Petitioners is effectively foreclosed though as noted in *Gardner*. In that case, the Third Circuit explained:

> Gardner argues that his special assessment ($50 per felony, or $350 total) means that his sentences are not truly concurrent in light of *Ray v. United States*, 481 U.S. 736, 737, 107 S. Ct. 2093, 95 L. Ed. 2d 693 (1987) (per curiam). That argument has been foreclosed by our decision in *Ross*. In that case, we held that because collateral attacks can challenge only a prisoner's custody, special assessments are not reviewable in habeas corpus proceedings. *See Ross*, 801 F.3d at 381–82. *Ross* leaves some room

> to argue that other "adverse collateral consequences" of multiple convictions may rise to the level of "custody," *id.* at 382–83, but Gardner identifies no such consequences in his case, even as he emphasizes this exception to the concurrent sentencing doctrine. Although the range of adverse collateral consequences is quite broad, *id.* Gardner cannot show that any rise to the level of "custody" in this case given his other life sentences. Accordingly, we invoke the concurrent sentence doctrine and decline to address whether *Rosemond* undermines Gardner's aiding and abetting convictions.

*Gardner*, 845 F.3d at 104. Thus, the monetary assessment levied on Petitioners' § 924(c) convictions does not foreclose the concurrent sentence doctrine's rationale in their cases as it does not affect Petitioners' custody in this habeas proceeding.[5] *See Logan*, 752 F. App'x at 122 (noting under the federal habeas statute, "the collateral consequences of a conviction for which a concurrent sentence is received must rise to the level of "custody" to be redressable.").

Next, Dritan only cites to *United States v. Ciavarella*, 716 F.3d 705 (3d Cir. 2013) in is reply brief to argue the concurrent sentence doctrine's rationale should not apply because their sentences on the § 924(c) convictions were part of a "sentencing package." (*See* No. 13-3664 ECF 99 at 2). Dritan's reliance on *Ciavarella* is misplaced. In that case, the court had already vacated one of the counts, and the Third Circuit had to determine whether it was proper to resentence *de novo*. *See id.* at 734. In Petitioners' cases however, this Court has not vacated their § 924(c). Thus, this case is at least one procedural step removed than was presented in *Ciavarella*. Accordingly, *Ciavarella* is distinguishable.

---

[5] Petitioners argue that *Gardner* and *Roman* are "illogical decisions." (*See* No. 13-3664 ECF 99 at 2; No. 13-3665 ECF 86 at 2). First, as a precedential Third Circuit opinion, this Court is bound by *Gardner*. Second, while *Roman* was decided before *Davis*, this Court still finds *Roman* as persuasive authority on applying the concurrent sentence doctrine's rationale to a consecutive sentence to a life sentence because it will not affect their "custody." *See also Eubanks*, 2019 WL 7293389, at *6 (applying concurrent sentence doctrine when Petitioner would still serve a consecutive life sentence).

Petitioners finally argue no judicial resources are saved in vacating their § 924(c) convictions considering *Davis*. (*See* No. 13-3664 ECF 99 at 1-2; No. 13-3665 ECF 86 at 1-2). This Court disagrees. Accordingly, Claim VIII is denied pursuant to the similar concurrent sentence doctrine's rationale.

For purposes of completeness, however, this Court will address Petitioners' subsequent argument that they are entitled to a full resentencing if their § 924(c) convictions are vacated. Petitioners rely on *Davis* to argue for a full resentencing that will hopefully lower their life sentences on the conspiracy to murder convictions. In *Davis* though, the Supreme Court noted that Courts of Appeals routinely vacate a defendant's entire sentence on all counts '"so that the district court may *increase the sentences* for any remaining counts if such an increase is warranted." 139 S. Ct. at 2336 (quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017)). Thus, this Court finds *Davis*' language distinguishable to warrant a full resentencing given Petitioners already are serving life sentences on their conspiracy to murder convictions separate and apart from their § 924(c) convictions.

Next, Petitioners assert a full resentencing would permit this Court to examine "current circumstances," such as Petitioners institutional records. (*See* No. 13-3664 ECF 99 at 2; No. 13-3665 ECF 86 at 2). Petitioners' total offense levels and criminal history categories were literally off the sentencing guidelines chart on their conspiracy to murder convictions. *Ciavarella* also does not help Petitioners. The § 924(c) convictions had no effect on this Court's sentence as it relates to Petitioners conspiracy to murder convictions to increase Petitioners' total offense level and or criminal history categories on those convictions. *See* 716 F.3d at 734 (noting district courts should resentence *de novo* when *an interdependent count of an aggregate sentence* is vacated) (emphasis added). Vacating the 924(c) convictions would not affect Petitioners' overall

19

sentence of life imprisonment. There is no circumstance under which their life sentence for conspiracy to murder would change in these circumstances.

    D.  <u>Claim IX – Ineffective Assistance for Failing to Object/Raise on Appeal Malice Aforethought Jury Instructions[6]</u>

       Petitioners next assert their conspiracy to murder convictions should be vacated because trial and appellate counsel were ineffective when they failed to object (or raise on appeal) to jury instructions on that count which failed to adequate instruct on malice aforethought. (*See* No. 13-3664 ECF 94 at 6-14; No. 13-3665 ECF 84 at 6-14). Petitioners first raised arguments related to the purported failure to adequate instruct the jury on malice aforethought in their February and April, 2019 motions for relief from judgment. (*See* No. 13-3664 ECF 72; No. 13-3665 ECF 70). Indeed, Petitioners summarized this claim as follows:

> Malice aforethought is a necessary element of the crime of conspiracy to commit murder in violation of 18 USC § 1117. But, at trial in this matter, the Court not only failed to instruct the jury as to malice aforethought, but, it affirmatively instructed the jury that the jury did not have to find malice aforethought. <u>Doc 351</u> p 6316. As Duka thus currently stands convicted of conspiracy to commit involuntary manslaughter, a non-existant offense, Duka is actually innocent, and, both trial counsel, and, post-conviction counsel, rendered ineffective assistance, making relief pursuant to Fed.R.Civ.P. 60(b)(6) appropriate. <u>Cox v Horn</u> 757 F 3d 113 (3rd Cir 2014).

(No. 13-3664 ECF 72 at 2; No. 13-3665 ECF 70 at 1). As previously noted, this Court held that Petitioners' February and April, 2019 motions for relief from judgment were second or successive § 2255 motions that had not been authorized by the Third Circuit. (*See* No. 13-3664 ECF 77 & 78; No. 13-3665 ECF 72 & 73). The Third Circuit denied a certificate of appealability from this Court's June 17, 2020 denial of Shain's motion for relief from judgment. (*See* No. 13-

---

[6] As noted *supra*, this Claim is untimely, but, for the reasons discussed *infra*, it also fails on the merits.

3665 ECF 83). Importantly though, the Third Circuit affirmatively held that the correctness of this Court's jury instructions was "not debatable" such that Shain had not made a substantial showing of a deprivation of a constitutional right. (*See id.*)

Petitioners frame this claim as one of ineffective assistance of trial and appellate counsel purported failure to object to the jury instructions on malice aforethought. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that

reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*,
445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove
prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the proceeding would have been different."
*Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the
outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d
Cir. 2012). "This does not require that counsel's actions more likely than not altered the
outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-
not standard is slight and matters only in the rarest case. The likelihood of a different result must
be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal
quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court
need not determine whether counsel's performance was deficient before examining the prejudice
suffered by the defendant as a result of the alleged deficiencies…. If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be
followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at
697).

Petitioners cannot establish that they are entitled to relief on this *Strickland* claim. As
indicated above, Petitioners raised similar arguments with respect to purported errors on the
malice aforethought instructions in previous filings. However, in denying a certificate of
appealability with respect to Shain's April, 2019 motion for relief from judgment, the Third
Circuit determined that that the correctness of this Court's jury instructions with respect to

malice aforethought was "not debateable." It thus follows that Petitioners cannot establish that counsel's performance fell below an objective standard of reasonableness given that the Third Circuit has now determined there is no debate that the instructions were correct. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted); *United States v. Jackson*, No. 09-5255, 2010 WL 1688543, at *8 (E.D. Pa. Apr. 27, 2010) ("Under *Strickland*, Jackson's appellate counsel cannot be ineffective for failing to raise a meritless issue on appeal.") (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)). Accordingly, Petitioners are not entitled to relief on this ineffective assistance of counsel claim.

E.   Claim X - Actual Innocence on Conspiracy to Murder Conviction

Finally, Petitioners argue they are actually innocent of conspiracy to murder. Petitioners assert: (1) a properly instructed jury on malice aforethought would not have convicted each of them of conspiracy to murder; and (2) there was insufficient evidence at trial of any actual agreement/conspiracy to murder anyone. (*See* No. 13-3664 ECF 94 at 14-15; No. 13-3665 ECF 84 at 14-15). With respect to Petitioners' first argument, this Court notes that the Third Circuit has already determined that it is not debatable that the malice aforethought instructions were correct. Accordingly, Petitioners fail to show they are "actual innocent" of conspiracy to murder based on purported faulty instructions that the Third Circuit has now deemed were correct.

With respect to Petitioners remaining actual innocence argument, as aptly explained by Judge Wigenton:

> Claims of actual innocence have classically served as gateway claims through which a court may reach an otherwise barred or defaulted claim, rather than a stand-alone basis for relief. *See, e.g., McQuiggan v. Perkins*, ⸻ U.S. ⸻, ⸻, 133 S. Ct. 1924, 1934–46 (2013). Indeed, even as a gateway claim, actual innocence will only be established where a petitioner shows "that it is more likely

Accordingly, Petitioners are not entitled to relief based on their actual innocence arguments to their conspiracy to murder convictions.[8]

## IV.    CERTIFICATE OF APPEALABILTIY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), the United States Supreme Court held: "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

---

[8] The decision by Petitioners to frame this claim as one of actual innocence as opposed to insufficiency of the evidence is perhaps not surprising as "Section 2255 ... was enacted as an alternative to the writ of habeas corpus to allow prisoners to seek collateral review in the trial court where the case was prosecuted." *United States v. Tyler,* 732 F.3d 241, 246 (3d Cir.2013) (citing *In re Dorsainvil,* 119 F.3d 245, 249 (3d Cir. 1997). Such a review, however, "may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 187 (1982). As a result, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can ... demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 616, 118 S. Ct. 1604, 1608, 140 L.Ed.2d 828, 835 (1998) (citing *Murray v. Carrier,* 477 U.S. 478, 496, 106 S. Ct. 2639, 2649–2650, 91 L. Ed. 2d 397, 413 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 118, 97 S. Ct. 2497, 2523, 53 L. Ed. 2d 594, 628 (1977), *Smith v. Murray,* 477 U.S. 527, 542, 106 S. Ct. 2661, 2670, 91 L. Ed. 2d 434, 450 (1986). It is perhaps because of this likely procedural bar to an insufficiency of the evidence claim that Petitioners frame this claim as one of actual innocence. For the reasons described above, however, the claim does not meet the actual innocence standard because no new evidence not available at trial was presented.

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* A COA will issue but only on whether this Court the concurrent sentence doctrine's rationale could be applied in this case. A COA will not issue on the remaining claims denied in this opinion.

## V. CONCLUSION

For the foregoing reasons, Respondent's motions to file sur-replies is granted. Dritan's motion for leave to amend is granted in part and denied in part. Dritan's attempt to relitigate the seven claims raised in his original § 2255 motion is denied. However, Dritan's motion for leave to amend is granted in its other respects, but, the other claims raised therein are denied. Shain's amended motion to vacate, set aside or correct his sentence is denied. A COA will issue on whether this Court could apply the concurrent sentence doctrine in declining to address Petitioner's request to vacate their § 924(c) convictions, but will not issue on Petitioner's remaining claims. An appropriate order will be entered.


DATED: August  4 , 2020                                          _s/Robert B. Kugler
                                                                 ROBERT B. KUGLER
                                                                 United States District Judge